

JUDGE NATHAN

14 CV 2888

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIGUEL GARCIA.

                  Plaintiff

-against-

CITY OF NEW YORK;
NYPD OFFICERS GLENN MOREIRA, tax id 954-151, F/K/U SAHIDULLAH, F/K/U DUCH, DOE 1-2,

                  Defendants

Index No.

A jury trial is demanded

**VERIFIED COMPLAINT**

RECEIVED APR 23 2014 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Miguel Garcia, by his attorneys, the Law Office of Ronald L. Kuby, hereby brings this action under 42 U.S.C. §1983 to redress his constitutional and legal rights, and alleges as follows:

## STATEMENT OF THE ACTION

1. Defendant police officers entered plaintiff's dwelling without a warrant or permission, arrested plaintiff without cause, physically abused him so severely that he suffered a liver hemorrhage, and, on information and belief, increased his risk of death from pre-existing medical conditions.

## JURISDICTION, VENUE

2. Jurisdiction in this Court is claimed under 42 U.S.C. §1983 and principles of pendant jurisdiction. Venue is proper because defendant City of New York is administratively located within the Southern District of New York.

## PARTIES

3. Plaintiff was at all times relevant a citizen of the state of New York and a resident of Bronx County. He suffers from stage four liver cancer, cirrhosis of the

1

liver, epilepsy, breathing disorders, and other ailments.

4.      Defendant police officers are employees and agents of defendant City of New York.  At all times relevant they acted in their capacity as a New York City police officer, in furtherance of the City's interests, and in conformance with the usages and practices of the City of New York and the New York City Police Department.

5.      Defendant City of New York is a municipal corporation.  It is authorized by its charter to maintain a police department, for which it retains responsibility.

## FACTS

6.      On February 13, 2014, at approximately 6pm, defendant NYPD officers Sahidullah and Duch knocked on plaintiff's door on the 1st floor at 1145 Boyton Avenue, in the Bronx.

7.      Plaintiff opened the door and saw that accompanying the officers was his former roommate, a man known to him as Carlito Martinez

8.      The officers told plaintiff that Martinez had accused plaintiff of refusing to return some property of Martinez' remaining in the apartment.

9.      Plaintiff responded that Martinez and Martinez' girl friend had caused considerable damage in the apartment, including wilfully smashing plaintiff's TV, and that he was retaining Martinez' property in an effort to obtain compensation.

10.     The officers suggested he come to the 43 pct the following day to press a complaint against Martinez.

11.     Plaintiff agreed.  The officers left, taking Martinez with them.

12.     Approximately three hours later, several more officers arrived at

plaintiff's door, again accompanied by Martinez.

13. They ordered plaintiff to let Martinez get his possessions.

14. Plaintiff complied. As Martinez entered, a number of officers walked in with him.

15. Plaintiff protested vigorously that they had no right to enter without a warrant and that he did not want them in his home.

16. The officers continued to stream in, ignoring his objections.

17. Plaintiff observed the officers searching his home.

18. Martinez left, carrying a bundle of that included items belonging to plaintiff.

19. Plaintiff complained to the officers but again was ignored.

20. After some time the officers handcuffed plaintiff, informed him he was under arrest for menacing, and removed him to the 43rd precinct. Plaintiff at the time was wearing slippers, a t-shirt, and sweat pants. He was not permitted to take his coat.

21. At the precinct he was informed that Martinez had alleged he menaced him with a pistol.

22. After six hours in the holding cell, he was taken by two plainclothes men, wearing no badges or name tags, to a small room and instructed to sign a document stating that he had consented to the officers' search of his apartment.

23. He refused, whereupon the plainclothes men proceeded to violently beat and kick him about the head and body.

24. The kicks and blows landed in part in the area of his liver, causing

3

intense pain.

    25.    After battering him continuously for four or five minutes, the men again demanded he sign the document.  He refused again.

    26.    Back at the holding cell he requested medical assistance.  None was provided.

    27.    The plainclothes men returned after about an hour, this time accompanied by defendant officer Glenn Moreira.  They took him back to the small room.

    28.    They first attempted cajoling, assuring him that things would go much better for him if he signed the document. .

    29.    His refusal once more led to another round of  battering and kicking, in which defendant Moreira joined.

    30.    He was returned to the holding cell, nearly unconscious.

    31.    Plaintiff is unable to reconstruct how long he remained in the holding cell.  At some point during the night, he was removed to Bronx Central Booking.

    32.    Soon after his arrival at Central Booking He suffered an epileptic seizure and was transported to Lincoln Hospital.

    33.    Treated with anti-convulsive medications he remained at Lincoln Hospital about four hours before returning to Central Booking..

    34.    The next day, unable to raise bail, plaintiff was remanded to Rikers Island.

    35.    At Rilkers plaintiff experienced a severe increase in his liver pain.  The doctor he finally saw after waiting four to five hours prescribed Motrin.

36. Plaintiff's liver conditions prohibit him from taking Motrin. Still suffering severely he returned to the dormitory area and went to the bathroom.

37. Blood poured out of his anus, flooding the bowl.

38. He was rushed to Bellevue Hospital, where he was placed on Morphine, scanned, and treated for hepatic hemorrhage

39. On February 18, after five days in custody, he was returned to court. Court officers took him aside, told him his case had been dismissed, and sent him on his way. He never saw the judge.

40. In all this time – mid February -- plaintiff's only raiments consisted of slippers, sweat pants, and a light shirt.

41. Some days after his release he was admitted to Montefiore Hospital and spent three days under oxygen, being treated for pneumonia.

42. Plaintiff was first diagnosed with liver cancer in 2010. He credits his survival to a finely calibrated plan of treatment by physicians at Montefiore Hospital that apparently significantly reduced the disease progress. He now has cause to believe that his treatment has been compromised and that his injuries at the hands of defendants has increased his risk of death..

## CAUSES OF ACTION

43. Plaintiff incorporates by reference every fact allegation in this Complaint as if fully set forth in every Cause of Action hereunder.

### FIRST
### 42 U.S.C. §1983 DEPRIVATION OF CIVIL RIGHTS
### FALSE ARREST

44. Defendant police officers claimed they arrested plaintiff based on

an informant's allegations. Since they arrested plaintiff without a warrant, the informant's credibility was never tested by a magistrate. Moreover, the informant had three hours earlier made a complaint to another set of officers (Defendants Sahidullah and Duch) in which he said nothing about a gun. This internal contradiction put the arresting officers on notice that the informant was not credible and that his allegations could not support probable cause.

## SECOND:
## 42 U.S.C. §1983 DEPRIVATION OF CIVIL RIGHTS
## EXCESSIVE FORCE

45. Plaintiff posed no risk to himself or to others, nor did he pose a risk of flight. There was no basis in law for the severity of force deployed on him.

## THIRD
## LIABILITY OF DEFENDANT CITY OF NEW YORK
## FOR CIVIL RIGHTS VIOLATIONS

46. The violations of decedent's civil rights by defendant officers resulted directly from policies and climate created and promulgated by City of New York and its Police Department.

## FOURTH
## TRESPASS

47. Defendant police officers had no warrant or exigence to enter plaintiff's home, nor was their entry otherwise privileged. Their trespass caused plaintiff injury and damages.

## FIFTH
## FELONIOUS ASSAULT AND BATTERY

48. Defendant police officers caused plaintiff to fear for his life and safety, and actually battered and kicked him for two extended periods of time. He

suffered severe physical and emotional pain. On information and belief, he also suffered reduced life expectancy.

## SIXTH
## INTENTIONAL INFLICTION OF PHYSICAL AND EMOTIONAL DISTRESS

49. In physically and emotionally abusing plaintiff in order to secure his signature to a false document, defendant officers conducted themselves in a manner so shocking and outrageous as to exceed all reasonable bounds of decency.

## SEVENTH:
## *RESPONDEAT SUPERIOR* LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

50. The misconduct of individual defendants occurred while they were on duty and in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents, officers, servants and employees of the defendant City of New York.

WHEREFORE, plaintiff demands the following relief jointly and severally against all defendants:

A. Injunctive relief, in that this Court should compel defendant City of New York to control illegal conduct among its police officers.

B. Declaratory relief in that this Court should declare that the conduct of the defendants herein violated plaintiff's constitutional rights;

C. Compensatory damages;

E. Costs and interest and attorney's fees;

F. Such other and further relief as this court may deem appropriate and equitable in the interests of justice.

Dated: New York, New York
April 16, 2014

George Wachtel [GW5921]
Law Office of Ronald L. Kuby
119 W. 23st., Suite 900
New York, NY 10011
212 529-0223
212 529-0644 fax
GWachtel@kubylaw.com

STATE OF NEW YORK )
)ss.:
COUNTY OF NEW YORK )

MIGUEL GARCIA, plaintiff herein, being duly sworn, says: I have read the above Complaint and hereby verify that it is true except as to statements identified as "on information and belief," and as to those I believe them to be true.

Signed before me this 21st day of April, 2014

GEORGE WACHTEL
Notary Public, State of New York
No. 02WA6029976
Qualified in New York County
Commission Expires August 30, 2009

8